**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**

FILED - USDC - NDTX - SA
SEP 25 '26 AM10:47

**DELANIE MCELROY, MSN, APRN, FNP-C,**
*Plaintiff, Pro Se*
v.
**SOUTH PLAINS RURAL HEALTH SERVICES, INC.,**
and **DR. JUDITH MADURA**, Individually and in her Official Capacity as CEO,
*Defendants.*
**Case No.:** 6:26-cv-00358
*(The Clerk will write this number here)*

# PLAINTIFF'S EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Delanie McElroy, MSN, APRN, FNP-C, appearing pro se, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 65(b) and Local Rule 7.1 for an emergency **Temporary Restraining Order (TRO) and Preliminary Injunction**. Plaintiff requests an immediate order compelling Defendants South Plains Rural Health Services, Inc. ("SPRHS") and CEO Dr. Judith Madura to execute and deliver a formal Notice of Involuntary Loss of Group Health Insurance Coverage documenting the absolute termination of Plaintiff's active employee health benefits.

This standard form is the sole document required to trigger a Qualifying Life Event (QLE) special enrollment into Plaintiff's spouse's employer-sponsored Aetna health plan, which provides coverage for Plaintiff's specialized oncology care at MD Anderson Cancer Center. Defendants are intentionally withholding this document to extort a waiver of legal claims from Plaintiff during an active medical crisis. Because Plaintiff's critical pre-operative appointments are scheduled for October 6, 2026, and her life-saving surgery is scheduled for October 30, 2026, time is strictly of the essence. Plaintiff requests that this Court intervene before October 1, 2026, to prevent permanent, irreparable harm to human life and to protect her professional licensing from retaliatory administrative weaponization.

## I. BACKGROUND AND STATEMENT OF FACTS

- **The Parties:** Plaintiff is a licensed Family Nurse Practitioner (FNP) and was employed as a clinical healthcare provider for Defendant SPRHS. Defendant SPRHS is a healthcare provider corporation operating clinics in Texas, with its principal corporate office located at **1000 FM 300, Levelland, TX 79336**. Defendant Dr. Judith Madura is the Chief Executive Officer of SPRHS.
- **November 17, 2025 (Execution of Secure Two-Year Employment Agreement):** Plaintiff and Defendants entered into a formal, binding *Employment Agreement for Services* running for an initial secure term of two (2) years through November 17, 2027 (**attached hereto as Exhibit H**). Section 4 of this agreement guaranteed Plaintiff a fixed base salary of $130,000 per year. Section 3(c)(5) established that productivity expectations of 4,200 annual clinic encounters were strictly calculated based upon a full-time, 40-hour work week. Section 3(c)(6) explicitly restricted the Center from imposing administrative restraints that would force the Provider to violate professional ethics or state law.
- **On or about August 25, 2026 (Formal Corporate Notice of Cancer):** Plaintiff prepared and transmitted a completed formal Corporate Leave of Absence Form via electronic mail, providing explicit written notice of her synchronous sigmoid colon cancers diagnosis and detailing her impending medical onboarding and surgical timeline at MD Anderson Cancer Center (**attached hereto as Exhibit A**).
- **August 28, 2026 (Immediate Post-Notice Retaliation and Termination Demand):** A mere three days after receiving Plaintiff's formal cancer disclosure, CEO Dr. Judith Madura immediately retaliated by transmitting an electronic mail message demanding the immediate mutual termination of Plaintiff's existing, secure employment contract (**attached hereto as Exhibit L**). This correspondence establishes the immediate, direct link between Plaintiff's medical disclosure and Defendants' subsequent adverse administrative actions.
- **August 29, 2026 (6:47 AM Written Ultimatum & Inline Quota Coercion):** Dr. Madura responded to Plaintiff's accommodation counter-proposals with a direct written ultimatum via inline electronic text (**attached hereto as Exhibit D**). In this transmission, Dr. Madura explicitly conditioned Plaintiff's job security on meeting un-accommodated, mathematically flawed quotas and attacked Plaintiff's professional standing by weaponizing her physical illness. Specifically, Dr. Madura textually stated that if Plaintiff could not return to work "*at full mental capacity to ensure safe patient care, then we need to reconsider returning.*" Furthermore, Dr. Madura rejected Plaintiff's requested daily patient safety cap, writing: "*I will not put a cap lower than what everyone else is required to see... you*

are already on reduced hours."

- **August 30, 2026 (9:08 AM Direct Notice and Emergency Request to HR):** Plaintiff sent a separate, urgent administrative directive directly to the SPRHS Human Resources team, specifically addressing HR representatives Vianca and Heather (**attached hereto as Exhibit C**). In this formal request, Plaintiff explicitly put HR on notice that her transition to part-time status (16 hours per week / 0.4 FTE) effective August 31, 2026, legally terminated her active employee health plan eligibility. Plaintiff explicitly requested the immediate generation of a standard Certificate of Creditable Coverage / "Loss of Coverage due to Reduction in Hours" letter to trigger a Qualifying Life Event (QLE) for her spouse's employer-sponsored Aetna plan, explicitly warning HR that any delay risked a catastrophic lapse in life-saving oncology coverage at MD Anderson Cancer Center.
- **August 30, 2026 (9:38 AM Interactive Process Invoked and Extortion Exposed):** Plaintiff sent a detailed, formal response directly to CEO Dr. Madura invoking her rights under the Americans with Disabilities Act (ADA) (**attached hereto as Exhibit B**). In this formal transmission, Plaintiff exposed that management was attempting to hold her to a prorated 4,200 annual encounter quota (amounting to 1,680 encounters per year, or roughly 17.5 patients per day). Plaintiff noted that a 4,200 annual encounter quota is the federal standard exclusively for a Full-Time Physician. Per standard CMS and HRSA cost-reporting guidelines for FQHCs, the baseline for a 1.0 FTE Nurse Practitioner is 2,100 encounters. Prorated to Plaintiff's requested 16-hour schedule (0.4 FTE), the actual federal benchmark is 840 encounters per year, which breaks down to a safe, manageable 8 to 9 patient encounters per day. Management's demand forced a full-time physician patient load into a part-time nurse practitioner schedule. To resolve this interactively, Plaintiff formally requested:
    1. *Schedule Reduction & Leave:* An immediate temporary transition to a part-time schedule of 16 hours per week (0.4 FTE) as a reasonable accommodation under the ADA, using accrued PTO/Sick Leave to cover part-time hours to the extent available, with any remaining time prior to surgery covered under job-protected unpaid ADA medical leave.
    2. *Insurance Classification & Loss of Coverage Letter:* Immediate processing of this reduction to part-time status. Because dropping below full-time status results in an involuntary loss of eligibility for employer-sponsored health insurance benefits under clinic policy, Plaintiff requested her formal Certificate of Creditable Coverage / "Loss of Coverage" letter immediately to trigger a Qualifying Life Event (QLE) and seamlessly transition to her spouse's Aetna plan prior to her MD

Anderson appointments.

3. *Surgical Leave & Conditional Return-to-Work Timeline:* Continuous medical leave through major surgery and acute recovery, with a conditional return target of October 26, 2026, explicitly dependent upon post-operative surgical pathology results (returning if lymph nodes were clear; requesting dynamic, extended medical leave as a continued ADA accommodation if immunosuppressive chemotherapy was pathologically required).
4. *Post-Return Productivity Accommodations:* Structuring her daily schedule template to be strictly capped to reflect the prorated federal benchmark of 8 to 9 patient encounters per day to ensure a safe environment for patient care, prevent medical errors, and manage medical fatigue.

- **August 31, 2026 (The Pretextual Leave Letter):** Dr. Madura issued a formal letter to Plaintiff acknowledging her severe cancer diagnosis, granting a nominal two-week leave period, but textually declaring that the clinic did not believe it possessed a legal duty to process the administrative health insurance documentation necessary to transition Plaintiff to her spouse's health plan (**attached hereto as Exhibit E**). This document establishes that Defendants were fully aware of Plaintiff's approved medical leave status when they subsequently cut off her clinical access.
- **August 31, 2026 (Issuance of the Coercive Waiver and Predatory Contract):**Concurrently with their refusal to issue standard administrative loss-of-coverage documentation, Defendants issued a formal, un-executed contract amendment titled "*Amendment to Employment Agreement for Services*" (**attached hereto as Exhibit F**). This contract was explicitly structured to exploit Plaintiff's medical vulnerability. Section 2 of the document mandated an absolute, non-renewable termination date of December 31, 2026, effectively converting her secure contract into a mandatory separation. Section 7 explicitly required Plaintiff to waive all civil protections and statutory rights under the Americans with Disabilities Act (ADA) and the Family and Medical Leave Act (FMLA), while stipulating that any scheduling adjustment was an optional "*gesture of compassion*" rather than a statutory accommodation requirement. Defendants explicitly conditioned the release of Plaintiff's life-saving insurance documentation on her execution of this absolute liability waiver.
- **August 31, 2026 (Plaintiff's Refusal & Executive Intimidation):** Plaintiff sent a return email refusing the predatory terms, stating an intent to continue working until the legal expiration of her secure contract on November 17, 2027, and clarifying that her statutory rights cannot and will

not be waived. Dr. Madura immediately retaliated in writing, stating: "Our attorney will structure the agreement, not you."

- **September 2, 2026 (HR Paperwork Hostage):** Plaintiff submitted a formal written request to HR for the Qualifying Life Event (QLE) insurance documentation needed to transition to her spouse's health plan. Management intentionally held this paperwork hostage to coerce a waiver.
- **September 4, 2026 (Insurance Surveillance & Referral Interception):** Plaintiff placed a protected telephonic call to Baylor Scott & White (BSW) Health Plan to coordinate care. BSW representatives subsequently initiated an outbound call back to the SPRHS Big Spring clinic to facilitate the specialist clearance. This incoming care coordination call was intercepted internally by SPRHS clinic staff and routed to executive management.
- **September 6, 2026 (EMR Lockout):** In direct retaliation for Plaintiff's refusal to sign away her civil rights, and triggered immediately by management's surveillance of her September 4 insurance call, Defendants locked Plaintiff completely out of the Electronic Medical Records (EMR) system, unilaterally stripping her clinical privileges and access without the mandatory committee oversight required by the SPRHS Professional Staff Bylaws. This punitive lockout occurred while Plaintiff was on the approved leave period granted by Defendants in their August 31 correspondence.
- **Administrative Weaponization and Licensing Threat:** By abruptly severing Plaintiff's access to the EMR system and clinical privileges without notice or standard transition protocols, Defendants actively engineered an administrative environment that jeopardized patient continuity of care. Defendants' intentional withholding of administrative documentation and systemic manipulation of employment status during an active medical crisis constitutes an imminent threat of retaliatory administrative reporting to the Texas Board of Nursing, designed maliciously to damage Plaintiff's professional standing and FNP licensure.
- **September 17, 2026 (Forced Constructive Discharge):** Due to an intolerable, hostile, and life-threatening work environment, Plaintiff was forced to serve a formal notice of Constructive Discharge to escape the administrative blockade and save her own life.
- **September 21, 2026 (MD Anderson Onboarding & Out-of-Pocket Expense):**Plaintiff attended her critical, time-sensitive oncology appointment at MD Anderson Cancer Center. Because Defendants held her QLE paperwork hostage to force a waiver, her existing insurance remained out-of-network, forcing an immediate, out-of-pocket self-pay financial expense of exactly $13,337.77 to access baseline clinical onboarding. Official financial records and billing receipts confirm this emergency out-of-pocket transaction

(**attached hereto as Exhibit K**).

- **September 22, 2026 (Written Extortion Confirmation):** CEO Dr. Judith Madura explicitly emailed Plaintiff, textually conditioning the routine administrative termination of her insurance on Plaintiff surrendering her legal rights and accepting a false "voluntary resignation" classification (**attached hereto as Exhibit M**). In doing so, Dr. Madura textually wrote: *"You had 2 calls with Baylor Scott and White on 9/4/2026... If you would like your health insurance benefits terminated at the end of the month it will be noted that your termination was VOLUNTARY."* Defendants' possession of this specific information confirms that management was actively monitoring, tracking, or intercepting communications regarding Plaintiff's private health plan records without authorization.
- **Immediate Medical Necessity & Plan Rule Violations:** Plaintiff's paid leave hours are completely exhausted, and her active earnings are at $0.00. Under Page 4 of the official **2025 SPRHS Employee Benefits Guide**, an employee is strictly and exclusively eligible for active group health insurance if they are *"an active full-time employee working 30 hours or more"* (**attached hereto as Exhibit G**). Because Plaintiff formally transitioned to a 16-hour part-time schedule (0.4 FTE) effective August 31, 2026, her benefit eligibility automatically and involuntarily terminated on that exact date by operation of the plan's explicit rules. Falsely maintaining Plaintiff as an "active full-time employee" in the corporate database while she works zero hours violates internal plan rules solely to block the generation of her QLE document. Objective diagnostic imaging, including a formal medical radiology report tracking the underlying masses, confirms the reality of Plaintiff's condition (**attached hereto as Exhibit I**). Official schedule confirmations document Plaintiff's critical, impending onboarding and surgical timeline at UT MD Anderson Cancer Center (**attached hereto as Exhibit J**). Plaintiff cannot clear her upcoming October 6, 2026 pre-operative abdominal MRI and labs, nor her October 30, 2026 surgical resection, without the immediate court-ordered release of this QLE document to activate her spouse's Aetna coverage.

## II. LEGAL ARGUMENT & STANDARDS FOR EMERGENCY RELIEF

To obtain a Temporary Restraining Order, the Plaintiff must establish four elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is denied; (3) that the threatened injury outweighs any

harm the injunction might cause the defendant; and (4) that the injunction will not disserve the public interest. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008).

**1. Likelihood of Success on the Merits**

Plaintiff possesses an unshakeable paper trail proving clear violations of Section 510 of the Employee Retirement Income Security Act (ERISA) [29 U.S.C. § 1140] and the Americans with Disabilities Act (ADA). ERISA Section 510 strictly prohibits an employer from discriminating, retaliating, or interfering with an employee's attainment or use of health plan benefits.

Defendants' position is legally un-supportable. Management's demands on August 29 and August 31 attempted to coerce a disabled Nurse Practitioner into meeting an abusive, full-time physician patient load (4,200 encounters) within a part-time schedule (0.4 FTE), flatly contradicting CMS and HRSA cost-reporting benchmarks which establish the 0.4 FTE benchmark at 840 encounters. Conditioning job security on mathematically flawed, un-accommodated quotas constitutes a facial failure to accommodate and open retaliation under the ADA. Dr. Madura's September 22nd email (**Exhibit M**) is an explicit, written confession of plan administration manipulation used as economic extortion to strip a disabled provider of her civil claims.

**2. Substantial Threat of Irreparable Injury**

The law recognizes that a delay in accessing necessary, specialized treatment for a synchronous sigmoid colon cancers diagnosis constitutes permanent, irreversible physiological harm that cannot be remedied by later monetary damages. Without immediate court intervention, Plaintiff will be barred from her October 6, 2026 pre-operative appointments and her October 30, 2026 surgery. The deliberate disruption of oncology treatment creates a life-threatening acceleration of disease, presenting a clear and immediate threat of permanent physical impairment or death. Furthermore, bad-faith, retaliatory reporting to medical licensing boards causes immediate, irreparable damage to a clinician's livelihood, professional identity, and career standing which cannot be un-done by back-pay later.

**3. Balance of Hardships**

The balance of hardships tips overwhelmingly in Plaintiff's favor. Forcing the Defendants to complete a routine, ministerial administrative form costs them absolutely nothing and inflicts zero operational or financial harm upon their business operations. Conversely, allowing Defendants to continue withholding this document completely denies Plaintiff access to a special enrollment period during an active cancer crisis. The choice is between a zero-cost, two-minute administrative task for a corporation versus a total barrier to life-saving oncology care for a human being. The potential harm to Plaintiff is absolute and fatal, while the burden on Defendants is nonexistent.

**4. The Public Interest**

Issuing this order directly serves the public interest. The public has

a profound interest in enforcing statutory federal protections under ERISA and the ADA. Furthermore, the public interest is explicitly disserved when corporations are permitted to weaponize health benefits administration or licensing authorities to exploit medical vulnerabilities, endanger human life, and circumvent civil rights laws.

## III. PRAYER FOR EMERGENCY AND STATUTORY RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. **GRANT** this Emergency Application for a Temporary Restraining Order and Preliminary Injunction;
2. **ORDER** Defendants South Plains Rural Health Services, Inc. and CEO Dr. Judith Madura to immediately, and no later than twenty-four (24) hours from the issuance of this Order, upload an involuntary separation flag to the health insurance portal and deliver a signed, formal Notice of Involuntary Loss of Group Coverage documenting the definitive termination of Plaintiff's active employee health benefits to Plaintiff via the designated secure communication channels at dmce5@outlook.com and dolores.smith@sanangelo.gov;
3. **ENJOIN** Defendants, CEO Dr. Judith Madura, and any agents of SPRHS from initiating, demanding, or pursuing any contractual clawbacks, repayment demands, or collections for the $10,000 sign-on bonus, advertising fees, or associated recruitment expenses, as Defendants' bad-faith conduct, statutory violations, and forced Constructive Discharge constitute a material breach of contract that legally excuses Plaintiff from repayment obligations and renders clawback enforcement an act of unlawful economic retaliation;
4. **ENTER** a protective injunction strictly prohibiting Defendants, their board members, executives, or legal agents from initiating, submitting, or threatening any adverse, retaliatory, or bad-faith complaints, reports, or negative administrative characterizations regarding Plaintiff to the Texas Board of Nursing, the National Practitioner Data Bank (NPDB), or any healthcare credentialing or licensing authority, as any such report during the pendency of this action constitutes immediate, irreparable professional and economic retaliation;
5. **ORDER** Defendants to immediately reimburse Plaintiff the exact sum of $13,337.77 for verified out-of-pocket, self-pay medical expenses directly caused by Defendants' retaliatory plan interference and withholding of QLE documentation;
6. **ORDER** an immediate administrative freeze and lockdown on all Defendant Electronic Medical Record (EMR) server logs, IT network tracking data, and executive communication threads

to preserve critical evidence regarding the illegal September 6, 2026 computer lockout and the September 4, 2026 telephonic surveillance;

7. **ENTER** a protective injunction prohibiting CEO Dr. Judith Madura or any administrative agents of the Center from contacting, harassing, or interfering with Plaintiff, Plaintiff's medical providers, or Plaintiff's health tracking records;
8. **AWARD** Plaintiff full compensatory, contract buyout, and front-pay damages for her secure contract through November 11, 2027, as a direct result of her forced September 17, 2026 Constructive Discharge, alongside punitive damages and reasonable attorney's fees, **with such contract buyout and front-pay damages representing absolute, non-mitigatable contract values that shall not be reduced, offset, or modified by any future earnings or subsequent employment obtained by Plaintiff**; and
9. **GRANT** such other and further relief as the Court deems just and proper under these emergency medical circumstances.

Dated: September 25, 2026

Respectfully submitted,

**Delanie McElroy, MSN, APRN, FNP-C**
*Plaintiff, Pro Se*
PO Box 1302
Sterling City, TX 76951
(325) 665-8595
dmce5@outlook.com

## VERIFICATION

I, Delanie McElroy, declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, that I am the Plaintiff in the above-captioned matter, that I have read the foregoing Emergency Application for a Temporary Restraining Order and Preliminary Injunction, and that the factual statements contained therein are true and correct to the best of my knowledge, information, and belief.

Executed on September 25, 2026.

**Delanie McElroy, MSN, APRN, FNP-C**

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule 7.1, I hereby certify that on September 25, 2026, I am appearing *pro se* and have not conferred with Defendants regarding the filing of this lawsuit. Plaintiff is currently managing a synchronous sigmoid colon cancers diagnosis under an active economic blockade with $0.00 in earnings. Because Defendants have previously weaponized her medical data, intercepted private insurance communications, and explicitly threatened her job security via written ultimatums, any advance notice of this emergency filing presents an imminent and severe risk of immediate, further administrative retaliation against Plaintiff's professional Family Nurse Practitioner (FNP) license and clinical standing. Immediate and irreparable physiological and professional injury will occur before the Defendants can be heard in opposition, necessitating this ex parte emergency application.

Delanie McElroy

**Delanie McElroy, MSN, APRN, FNP-C**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**SAN ANGELO DIVISION**
**DELANIE MCELROY, MSN, APRN, FNP-C,**
*Plaintiff, Pro Se*
v.
**SOUTH PLAINS RURAL HEALTH SERVICES, INC.**,
and **DR. JUDITH MADURA**, Individually and in her
Official Capacity as CEO,
*Defendants.*
**Case No.:** ____________________

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Emergency Application for a Temporary Restraining Order and Preliminary Injunction, along with all supporting memorandum, financial declarations, and Exhibits A through M, is being presented concurrently to the Clerk of the Court for the United States District Court for the Northern District of Texas, San Angelo Division, on this 25th day of September, 2026.

Upon the Court's prompt adjudication and granting of Plaintiff's Motion to Proceed In Forma Pauperis pursuant to **28 U.S.C. § 1915(d)** and **Federal Rule of Civil Procedure 4(c)(3)**, formal service of process shall be immediately effectuated by the United States Marshals Service, or by an authorized private process server appointed by the Court, who shall deliver a summons, a copy of the Complaint, and a copy of this Emergency Application for a Temporary Restraining Order to the Defendants at their principal corporate headquarters and operational place of business:

**South Plains Rural Health Services, Inc.**
1000 FM 300
Levelland, TX 79336

**Dr. Judith Madura, CEO**
South Plains Rural Health Services, Inc.
1000 FM 300
Levelland, TX 79336

Dated: September 25, 2026
Respectfully submitted,
Delanie McElroy

**Delanie McElroy, MSN, APRN, FNP-C**
*Plaintiff, Pro Se*
PO Box 1302
Sterling City, TX 76951
(325) 665-8595
dmce5@outlook.com